HARDWARE MUTUAL CASUALTY CO. *v.* CRAFTON.

5-2459                                                    350 S. W. 2d 506

Opinion delivered October 16, 1961.

[Rehearing denied November 20, 1961.]

*Barber, Henry, Thurman & McCaskill,* for appellant.

*Spitzberg, Bonner, Mitchell & Hays,* for appellee, Riverside Insurance Co.

*Guy H. Jones* and *Francis T. Donovan,* for appellee, J. E. Crafton.

NEILL BOHLINGER, Associate Justice. On July 14, 1957 a man by the name of Anderson driving a car which was insured under a family automobile policy issued by the Riverside Insurance Company of America [which company will hereafter be referred to as Riverside] drove to some fishing facilities operated by appellee, J. E. Crafton. Crafton's operation in the maintenance of a fishing dock and renting boats was covered by what is termed as an "Owners, Landlords and Tenants Liability Policy" issued by Hardware Mutual Casualty Company, appellant herein which will be referred to as Hardware Mutual.

Upon arriving at the boat dock, Anderson had parked his automobile in the driveway and had unloaded his fishing paraphernalia. From this point in the driveway, appellee got in the car and drove it to a parking area on the fishing premises and at that point Crafton alighted from the automobile and walked approximately thirty or forty feet. After Crafton had left the automobile, for reasons unknown the automobile rolled into the lake. The car was salvaged at a cost to Anderson of $651.83.

Anderson appears to have recovered this damage from his insurance carrier, Riverside, and thereafter Riverside and Anderson filed suit in the Pulaski Circuit Court against J. E. Crafton, the appellee herein. Appellee's insurance carrier, Hardware Mutual, was notified of the pendency of this action but appears to have taken no action in the case nor was it a party. The action in the Pulaski Circuit Court resulted in a judgment in favor of Anderson and Riverside against Crafton for the sum of $975.33 representing the original debt, costs and attorney's fees. Following the rendering of the Pulaski Circuit Court judgment against him, Crafton filed in the Faulkner Circuit Court this action against Hardware Mutual alleging that Hardware Mutual was obligated to pay the judgment against him obtained by Riverside and

Anderson because of the Owners, Landlords and Tenants Policy issued to him by Hardware Mutual. Hardware Mutual then filed its answer denying liability and its third party action against Riverside asserting that Crafton was an omnibus insured under the policy issued by Riverside and that it was the duty of Riverside to defend and pay any judgment awarded against Crafton in the action.

The above stipulated facts and the record in the case were submitted to the judge of the Faulkner Circuit Court who filed his conclusions of law with the clerk. The conclusions of law represent much research and thought on the part of the judge and have been most helpful to us. We have further had the help of an able brief by the attorneys for the appellant and we leave the field of their logic and conclusions with reluctance.

The main issue in this case turns upon the construction to be given to a phrase contained in the "exclusions" embodied in the policy issued by Hardware Mutual to the appellee. While the policy provided for the payment by Hardware Mutual of sums which the insured should become legally obligated to pay as damages because of "* * * injury to or destruction of property caused by accident and arising out of accidents hereinafter defined," exclusion paragraph "K" in the policy specifically provides that the policy does not apply to "property in the care, custody or control of the insured or property as to which the insured, for any purpose is exercising physical control." It is the contention of the appellant that the exclusion paragraph cited above precludes the appellee from recovering as the vehicle that was damaged was in the "care, custody, or control" of the insured appellee, or was property as to which Crafton was exercising physical control.

The care, custody and control clause in liability policies, so far as our research has extended, appears to be almost universally used but its construction is, to a large extent, dependent upon circumstances of each case and

we conclude that the phrase should be applied with common sense and practicality. In a general way the word "care" has reference to temporary charge; "custody" implies a keeping or guarding and a necessity for an accounting, and "control" refers to power or authority to manage, superintend, direct or oversee. The use of these terms has, from time to time, created some degree of confusion by reason of some factual dissimilarity. This has generally led to the inclusion of the words "property to which the insured for any purpose *is* exercising physical control." [Emphasis ours.] Whether or not this addition clarifies or is merely tautological, we do not say, but certainly the addition of "for any purpose *is*" makes it clear that the application of the words in the exemption apply to the property at the time of the accident.

We have examined with great care the authorities cited by the parties hereto, as well as many others, and the law as outlined in them has been carefully considered by us in reaching the conclusion which is ours. *Cohen & Powell* v. *Great American Ins. Co.*, 127 Conn. 261, 16 A. 2d 354, 131 A. L. R. 1102 (1940) ; *P & M Stone Co.* v. *Hartford Acc. & Ind. Co.*, 251 Ia. 243, 100 N. W. 2d 28 (1959) ; *Monroe County Motor Co.* v. *Tennessee Odin Ins. Co.*, 33 Tenn. App. 223, 231 S. W. 2d 386, 395 (1950) ; *Jacobson* v. *Aetna Cas. & Sur. Co.*, 233 Minn. 383, 46 N. W. 2d 868, 871 (1951). We see nothing to be gained by pointing out the similarity, or lack thereof, between the citations to the case at bar and to point them out would unduly prolong this opinion.

One thing that becomes apparent in the vast majority of the cases involving construction of the care, custody and control exclusions is the fact that, with the exception of the *Saltzman* case, [*Saltzman* v. *Great American Indemnity Co.*, 118 Fed. Supp. 944, which is frequently quoted] the insured was under a contract with the owner of the chattel to do some work upon the damaged article. The most that can be said for Saltzman is that he was a trespasser with an inquisitive mind which two conditions resulted in some damage to an airplane.

We do not find the facts in that case applicable to the case at bar.

In the instant case the only contract that existed between Crafton and the car owner was that Crafton was to rent dock facilities and a boat to the car owner in order that the car owner might go out on the lake and catch some fish, or endeavor so to do. The presence of the automobile on Crafton's property was merely incidental and the only connection Crafton had with the car was access thereto.

We think the case of *Maryland Casualty Company* v. *Jolly*, 67 N. M. 101, 352 P. 2d 1013, is pertinent. In this case a bus was damaged by fire while on Jolly's premises and while Jolly was doing repair work on the gas tank. The tank had been removed by an employee of the owner of the bus and that employee was to replace the tank when repaired. The court said that physical presence alone was not sufficient to bring the bus within the care, custody and control of the appellant and that the presence of the bus on the premises of appellant was merely incidental to repairing the tank and used this language:

"Where, however, the damaged property or premises were merely incidental or adjacent to the contracted object upon which work was being performed by the insured, such property is not within the care, custody or control of the insured even though he might be permitted access thereto during the performance of his contract."

In the case of *Thomas W. Hooley & Sons* v. *Zurich General Accident & Liability Ins. Co., Ltd.,* 235 La. 289, 103 So. 2d 449, 67 A. L. R. 2d 1078, there was a situation in which the insured had a contract for dismantling a portion of a statute of General Lee and in the course of the work, an ornamental urn at a corner of the base of the statue was accidentally damaged. In that case the court said:

"As the District Court held, the attempted first defense that the damaged property was within the 'care, custody or control' exclusion clause is clearly without factual or legal merit.

"Plaintiff's dismantling contract concerned the Lee statute and its supporting column and did not include the base of the monument (upon which the column was situated) or the ornamental urns at the corners of the base, accidental damage to one of which urns is the subject of the present suit.

"The uniform jurisprudence holds that damaged property or premises merely incidental or adjacent to the contracted object upon which work is being performed by the insured is not within the 'care, custody or control' of the insured for purposes of the exclusion clause in question, even though he might be permitted access thereto during the performance of his contract. *Boswell* v. *Travelers Indem. Co.*, 1956, 38 N. J. Super. 599, 120 A. 2d 250; *Maryland Cas. Co.* v. *Hopper,* Tex. Civ. App. 1950, 237 S. W. 2d 411; *Rex Roofing Co.* v. *Lumber Mut. Cas. Ins. Co.*, 1950, 280 App. Div. 665, 116 N. Y. S. 2d 876; *A. T. Morris & Co.* v. *Lumber Mut. Cas. Ins. Co.*, 1937, 163 Misc. 715, 298 N. Y. S. 227; *Cohen* v. *Keystone Mut. Cas. Co.*, 1943, 151 Pa. Super. 211, 30 A. 2d 203."

The question as to whether or not Crafton was negligent when he parked the car and walked away from it, we are not concerned. The only question is, was the damaged car in the care, custody and control of Crafton at the time of the damage. As we stated above, Crafton's only connection with the car was access to it. Whatever his purpose in moving the car from the driveway to a parking area, that purpose had been completed and Crafton had left the car, turned his back upon it and walked some distance to engage in business of his own. He was some forty feet from the car but not directing it in any way, was not driving or steering it, and under the facts we are unwilling to say that he was exercising care, custody or control of the property or that he was physically controlling it at the time it was damaged. Therefore the exclusions under paragraph "K" of the exclusions do not apply and the trial court properly so found.

The appellant argues that the trial court erred in dismissing its third party complaint against Riverside. We do not agree.

The only connection between Hardware Mutual and Riverside was through Crafton. The most that can be said is that Hardware Mutual was a privy of Crafton. A privy may be defined as a person having a mutual interest with another in the same action or thing, 72 C. J. S. 957. Any claim that Crafton might have had against Riverside was resolved in the case of *Anderson and Riverside* v. *Crafton* in the Pulaski Circuit Court. Appellant was advised of this action and declined to participate or become a party thereto. Hence, if Crafton had no cause against Riverside, those in privity with him can have none.

Reviewing the contract of Hardware Mutual with the exclusions which it contains in the light of the proof presented to the trial court, we find the decision of the trial court proper and the cause in all things is affirmed.