**EMPLOYERS MUTUAL CASUALTY COMPANY et al., Appellants,**

v.

**TRINITY UNIVERSAL INSURANCE COMPANY, Appellee.**

No. 16496.

·Court of Civil Appeals of Texas.

Fort Worth.

Feb. 28, 1964.

Rawlings, Sayers, Scurlock & Eidson, and Nelson Scurlock, Fort Worth, for appellants.

Touchstone, Bernays & Johnston, and W. Richard Bernays, Dallas, for appellee.

MASSEY, Chief Justice.

The case is one requiring a determination of the meaning of an "exclusion" clause in a Texas Standard Form automobile liability insurance policy. The question to be resolved is whether, under the state of facts properly deemed to have been actually found by the trial court, the loss and damage from fire sustained by the owner of real and personal property (and such person's subrogee, the Employers Mutual Casualty Company) was or was not covered by the automobile liability insurance policy of him who was negligently responsible for the fire.

The real property with which we are concerned is a warehouse used for the storage of automobile parts. Its size and structure was such that several vehicles could be driven inside the building for purposes of loading, night storage, etc. The personal property with which we are concerned included various items of automobile parts therein stored.

It is apparently conceded that the policyholder was a person who would have been "in charge of" the lost and damaged property, but for the fact that he engaged in an unauthorized activity upon the premises of his employer, owner of said property, at the time the fire occurred, or but for the fact that the fire resulted from that unauthorized activity.

The policyholder was employed as a "warehouseman". His duties included those of cleaning up and maintaining the premises and the shelves and bins used for storage, the receiving of articles for storage and the placing of them in their proper places. His duties also included that of remaining at the premises when all others were away, occasionally making retail sales and/or deliveries of property from the warehouse to those who would appear thereat or accepting items to be received. In other words, when the store was open and he was the only person there he "kept the store", by which term we mean, among other things, that he was watching and (presumably) protecting the premises and its contents.

On or about October 20, 1961, the policyholder was alone at the premises. He decided to drive his personal automobile into the interior of the warehouse and clean and polish it "on company time". Though not specifically proved, it is to be inferred from the record that he had nothing to do except sit idly by at the premises in order to answer the telephone should it ring and to wait upon any customer who might present himself, etc., the cleaning and maintenance duties of his employment having been discharged, at least for the time.

He did bring his automobile inside. He did clean and polish it. Then he decided to and did clean the motor and carburetor with some liquid belonging to his employer, which liquid was prescribed to be used for such a purpose. As the result of this operation a quantity of the liquid remained under his automobile, unevaporated, when he was finished. He started up the engine of the automobile. The liquid proved to be flammable. Operation of the motor of the automobile ignited it. Although the policyholder attempted to put out the fire he was unable to do so and it spread to other parts of the building, damaging the same by fire and also the stock of goods therein.

His policy of insurance was in force and effect with the Trinity Universal Insurance Company. Thereunder said company obligated itself to pay on his behalf such sums as he should become legally obligated to pay as damages because of injury to or destruction of property arising out of his ownership, maintenance or the use of the automobile. Excluded from such coverage, however, was any such injury to or destruction of "property rented to or *in charge of* the insured other than a residence or private garage." (Emphasis supplied.)

■ Concurring with the opinion of the trial court we hold that the policyholder was *in charge of* the real and personal property lost and damaged in the fire, for which he was no doubt negligently responsible. That being so he was not afforded insurance coverage under his policy of insurance with Trinity Universal Insurance Company as applied to such loss and damage. The "exclusion" thereof from policy coverage was clear, plain and unambiguous. Rules to which resort should be had in respect to construction of ambiguous policy provisions are not necessary of application in this instance. The loss was one the exclusion clause had removed from policy coverage.

■ The policyholder was "taking care" of his employer's premises and stock of goods to the extent that he was present within the warehouse, available should the telephone ring, a patron or other person appear, etc. His interest therein was under color of "right" or "duty" derived from his employer, the owner. He had not wholly turned aside from his duty of care and custody, but, though having given precedence to his own affairs, had so situated himself that he might subvert his attention thereto in the event any occasion should arise where he would be called upon to perform active, as contrasted with passive, duties of his employment. A "watchman" performs duties which are approximately 90% passive, i. e., merely being in a place to guard premises or personal property where any threat to the safety thereof would in all probability come to his attention—so that affirmative protective action

might be taken should occasion therefor arise. Essentially, a "watchman" is "in charge of" property under his observation or protection. He remains "in charge of" such unless he wholly abandons it, leaving it at the mercy of a marauder. He does not wholly abandon it though he might engage in some personal activity unrelated to his duty so long as he keeps it under observation so that he may take appropriate action in the event any occurrence makes action necessary. We believe the same thing might be said of the policyholder in the instant situation, inasmuch as he was "keeping the store".

That the policyholder was in charge of the property and premises of his employer under the findings of fact or conclusions of fact to be implied, coupled with the trial court's obvious conclusions of law, find adequate support in the evidence. The contention is advanced that since the policyholder was acting outside the scope and course of his employment when he devoted his primary attention to his own affairs he lost the power to represent his employer in regard to the care of his property. This contention we deem without merit. The tests to be applied in the situation before us are not controlled by any examination into the matter of whether the policyholder was or was not acting as his employer's agent or would have had a valid claim under the Texas Workmen's Compensation Act had an injury been sustained.

In oral argument the attorney for the appellant waived a point of error contending that since the building was used as a garage it was not excluded from coverage whereby protection under the policy should apply. This waiver was wisely taken, but we need not discuss the point.

The question herein decided has not previously been passed upon in this state so we have not cited any legal authority during the course of our discussion. We have considered, however, among others, the following authorities (with cases therein cited): 419 Ins. Law Journal 727 (December, 1957),

"Care, Custody and Control: * * *"; 432 Ins. Law Journal 7 (January, 1959), "Care, Custody or Control Exclusions"; January, 1963, Insurance Counsel Journal, p. 96, "Provisions of Automobile and Liability Insurance Contracts (p. 103 on property damage exclusions)"; July, 1958, Insurance Counsel Journal, p. 288, "The Care, Custody, Control Exclusion of Liability Insurance Policies"; 131 A.L.R. 1105, Annotation: "Construction and application of provision of automobile liability or indemnity policy excluding liability for damage to property in charge of insured, or variation of such provision"; 14 C.J.S. Charge p. 401 et seq.; Houston Oil & Transport Co. v. Aetna Ins. Co., 1929 (Dist.Ct. Houston), 36 F.2d 69, and opinion reversing at 49 F.2d 121 (CCA 5th); Cohen & Powell v. Great American Indemnity Co., 127 Conn. 257, 16 A.2d 354, 131 A.L.R. 1102; National Fire Insurance Company v. Davis, 1944 (Tex.Civ.App., Eastland), 179 S.W.2d 316, writ ref., w. o. m.

Judgment is affirmed.